**THE MCDANIEL LAW FIRM, PC**
54 Main Street
Hackensack, New Jersey 07601
(201) 845-3232
(201) 845-3777 (Facsimile)
*Attorneys for Plaintiff Century Media, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CENTURY MEDIA, LTD.<br><br>         Plaintiff,<br><br>    v.<br><br>SWARM # 4234C, a joint enterprise, and JOHN DOES 1-X, such persons being presently unknown participants and members of the joint enterprise,<br><br>         Defendants. | Civ. Action. No. 2:12-cv-3868 (FSH)(PS)<br><br>**DECLARATION OF<br>JAY R. MCDANIEL, ESQ.**<br><br>**RETURNABLE: OCTOBER 15, 2012** |

I, **JAY R. McDANIEL, ESQ.**, declare, under penalty of perjury, as follows:

1.    I am an attorney duly admitted to the practice of law in New Jersey and before this Court.  I am a principal of The McDaniel Law Firm, PC, counsel for Plaintiff **CENTURY MEDIA LTD.**  I make this Declaration in support of Plaintiff's opposition to Defendant's Motion to Quash or Modify Subpoena and Motion to Dismiss (**ECF Document # 9**).  As the Movant has failed to conform his or her moving papers to this Court's rules or to provide sufficient information to provide a rational response, the motion must be denied in its entirety.

2.    The Movant here attempts to proceed anonymously to quash the subpoena Plaintiff duly served pursuant to this Court's Order on the Movant's Internet Service Provider, to dismiss the action against him or her, and to sever the Doe Defendants from the case.

3.      The Movant has not conformed this motion by identifying himself or herself as is generally required by Fed. R. Civ. P. 10(a).  Additionally, the Movant has not been granted leave to proceed anonymously before this Court.

4.      The Movant also fails to support his or her motion with a sworn affidavit certifying as to the truthfulness of the allegations contained in the moving papers.  While the motion is *pro se,* and thus some informality is appropriate, it is unfair to Plaintiff that the motion not be supported by any statement under oath.

5.       As our experience has shown, the Movant is one of many Doe Defendants who has simply downloaded a template of an improper motion papers provided by the author of the blog dietrolldie.com.[1]   The factual assertions thus do no represent the Movant's actual experiences or beliefs, nor is the law in any respect applicable to this action.  It was simply copied.  A true and accurate copy of this template that our office downloaded is attached hereto as **Exhibit A**.

6.      The Movant's factual allegations are as follows:

- Plaintiff has failed to properly investigate the factual allegations in this case regarding joinder of the Doe Defendants;

- Our office sends demand letters to scare the Doe Defendants and force settlements;

- Our office makes persistent phone calls to pressure the Doe Defendants to settle with Plaintiff;

- Our office will selectively prosecute the Movant as an example to other defendants if his or her identity is revealed;

---

[1]      http://dietrolldie.com/2011/09/30/draft-motion-to-quash-motion-to-dismiss-baseprotect-ug-ltd-v-does-1-x-new-jersey-case-no-211-cv-03621-ccc-jad-the-mcdaniel-law-firm/

- Plaintiff will retaliate against the Movant; and

- Plaintiff has no intention to fully litigate its claims.

7.     These allegations by the Movant are not only false, but represent the baseless speculation of some anonymous author that the Movant has simply copied.  The Movant has not, and indeed cannot, state any of these factual allegations based on his or her own personal knowledge, as the Movant has had no interaction with Plaintiff or our office.

8.     The gravamen of this case is that the Defendant Swarm, a discrete network operated by the individual Doe Defendants, unlawfully distributed a pirated copy of the copyrighted work "Dark Adrenaline."  The Swarm operated within New Jersey and maintained servers, network equipment and Internet connection nodes.  Plaintiff has identified the specific copy of the work, the fact that the copy was being distributed by the Swarm, and as to each defendant, that the work was in fact distributed from the IP address identified in the Complaint.

9.     Plaintiff and its counsel has further verified the IP address by using databases to identify the location and Internet Service Provider (ISP) that owned that account.  A significant amount of information about the Swarm and its members is recorded.  This includes the manual verification that the Swarm is engaged in the distribution of a particular copy of the work, and from the individual computers the unique hash file, the unique GUID (an alphanumeric code created by bit torrent software) the port, the protocol, the file name, the date and the time of the unlawful distribution.  Much of this information is then verified or cross-check through manual lookups.

10.     Plaintiff intends to fully litigate its claims of copyright infringement, including trying the case with each Doe Defendant.

11.     Our office has consistently engaged in good-faith negotiations with Doe Defendants in the variety of cases we prosecute in this district.  Our office issues demand letters to each of the identified Doe Defendants and negotiates with them if they are interested in settling their cases.  Our office advises each Doe Defendant, both through our letters and our phone conversations, that they should seek the advice of counsel.  We also publish a website, www.digirights.us, on which we attempt to provide an even-handed discussion of the particulars of torrent litigation.

12.     Our office negotiates the settlement amount with each Doe Defendant on a case-by-case basis.  We evaluate the merits of each matter and have, on a number of occasions, dismissed potential defendants when it was clear that the cable carrier had made a mistake.  Whatever may be the practice of other attorneys as alleged by Movant, we treat any putative or actual defendant with respect and fairness.

13.     Our office has never made any initial contact through phone calls to any Doe Defendant in any such torrent litigation.  Indeed, we have never initiated any telephone contact with a Doe Defendant.  We only respond to inquiries that we receive. In fact, we receive phone calls from the Doe Defendants who seek more information regarding the lawsuit and negotiate settlements with them if desire to do so.  We have not once affirmatively called a Doe Defendant to pressure them into settlement.  We only respond to calls by Doe Defendants to our office.

14.     We do send a series of demand letters, but the assertion that we attempt to pressure defendants into settlement is simply not true.  Our correspondence, although firm – we have a client's interests that we are ethically bound to pursue – is accurate and professional.

15.     In sum, Plaintiff and our office treats this case like any other litigation in our office – our client has a claim and we litigate that claim.  This case is not given any different treatment than any other case in which we are involved.

16.     By improperly attempting to proceed anonymously and simply copying baseless accusations written by someone else, the Movant deprives Plaintiff of investigating the merits of his or her motion.  Additionally, by failing to provide a sworn statement and subject himself or herself to the penalties of perjury, the Movant can make any false statement with no potential consequences.

17.     Plaintiff respectfully requests that this Court deny the Movant's motion because of the Movant's failure to comport with this Court's rules that would allow Plaintiff a full and fair opportunity to oppose this motion.


I declare under penalty of perjury that the foregoing is true and correct.

DATED:  October 1, 2012                              THE MCDANIEL LAW FIRM, P.C.


By:     _____
        Jay R. McDaniel, Esq.
        *Attorneys for Century Media, Ltd.*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

BASEPROTECT UG, LTD.,

A German Corporation,

      Plaintiff,

vs.

DOES 1-X, (such persons being presently unknown,

      Defendants.

_____/

CASE No. 2:11-cv-03621-CCC-JAD

Hon. Claire C. Cecchi

Hon. Joseph A. Dickson

MOTION TO QUASH OR MODIFY
SUBPOENA AND MOTION TO DISMISS

## MOTION TO QUASH OR MODIFY SUBPOENA AND MOTION TO DISMISS

I received a letter from my ISP regarding a subpoena, which included a copy of the Order Granting Plaintiff's Application for Leave to Take Discovery.

From accounts of previous defendants of other copyright infringement lawyers, such as Steele Hansmeier, these subpoena notifications are followed by demand letters. These letters -- which usually demand amounts in the area around $2500 - $3000, to avoid dealing with their lawsuit[2] -- and their phone calls, which are persistent[3], are the reason I am filing this motion, and for this reason, I respectfully request that I be allowed to do so without revealing my personal identifying information.

Plaintiff may argue that this motion should be dismissed because of its anonymous filing.  The reason for filing this motion anonymous is because I fear retaliation by Plaintiff.  The fear of retaliation is so great that I will be mailing the motions to the court and Plaintiff from a State other than my own.  By filing this motion, I draw attention to Plaintiff's questionable action

---

[2]Google search: "steele hansmeier letter"
[3]Google search: "steele hansmeier phone calls"

of how they pursue this and other copyright infringements case.  If I filed this motion under true

name (or even IP address), I feel I would be singled out by Plaintiff for selective prosecution.

The prosecution would not be because of the alleged copyright infringement, but to serve as an

example to other defendants who do not settle with Plaintiff regardless of guilt or innocence.

<u>INTRODUCTION</u>

To cut court costs while suing as many individuals as possible, Plaintiff's

counsel, Jay McDaniel (The McDaniel Law Firm) is using improper joinder in this mass lawsuit

alleging copyright infringement through BitTorrent.  BASEPROTECT another similar mass law

suits in New Jersey (*BASEPROTECT UG, LTD., a German Corporation vs Does 1-X case 2:11-*

*cv-02021-DMC-JAD*) with a 266 defendants.

Similar cases to this one have been dismissed, such as *CP Productions, Inc. v. Does*

*1-300 case 1:2010cv06255,* and in this case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something
> that this court will assume to be the case, given the Complaint's allegations that so
> state), each of those infringements was separate and apart from the others. No
> predicate has been shown for thus combining 300 separate actions on the cheap –- if
> CP had sued the 300 claimed infringers separately for their discrete infringements,
> the filing fees alone would have aggregated $105,000 rather than $350.

Later, Judge Milton Shadur writes about Steele Hansmeier's abuse of the litigation

system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a
> subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against
> no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification
> of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This
> Court's February 24, 2011 memorandum opinion and order has already sounded the
> death knell for this action, which has abused the litigation system in more than one
> way. But because the aggrieved Doe defendants continue to come out of the
> woodwork with motions to quash, indicating an unawareness of this Court's
> dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9,

2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.
(*CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker

writes in denying the motion for expedited discovery:

Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.
*VPR Internationale vs. Does 1-1017 case 2:2011cv02068*

In the Northern District of California, these nearly identical BitTorrent cases have

been severed for improper joinder:

*Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)*
*IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*
*Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*
*New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

In yet another nearly identical BitTorrent case, filed in the Northern District of

California by Steele Hansmeier, *Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258*, Judge

Samuel Conti found the same joinder problems, and wrote in his order denying request for leave

to take early discovery, "This Court does not issue fishing licenses;" And these nearly identical

BitTorrent cases in the Northern District of California by the same plaintiff Boy Racer, again

represented by Steele Hansmeier, have been severed for improper joinder:

*Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)*
*Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)*

In a recent order (6 Sep 2011) by Judge Bernard Zimmerman, Northern District of

California, 5010 John Does were dismissed from *On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ*, due to improper joinder.  Judge Zimmerman stated the following in his order:

> "This Court does not condone copyright infringement and encourages settlement of genuine disputes.  However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

## ARGUMENTS

**1. Plaintiff Has Improperly Joined 1449 Individual Defendants Based on Entirely Disparate Alleged Acts**

**2. Plaintiff Has Not Done Significant Investigative Effort to Justify Granting a Subpoena For Subscriber Information From the Internet Service Provider**

Plaintiff's joinder of 1449 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued.  Mass joinder of individuals has been disapproved by federal courts in both the RIAA cases and elsewhere.  As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at \*1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at \*2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at \*5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v.*

*Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004)

(magistrate recommended *sua sponte* severance of multiple defendants in action where only

connection between them was allegation they used same ISP and P2P network to conduct

copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1

(E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases

Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550

LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra

Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings,

Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A,

(dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254

defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in

Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule

26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D.

Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting

discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could

demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of

the Internet to infringe a single work.  While that accurately describes the facts alleged in this

case, it does not change the legal analysis. Whether the alleged infringement concerns a single

copyrighted work or many, it was committed by unrelated defendants, at different times and

locations, sometimes using different services, and perhaps subject to different defenses.  That

attenuated relationship is not sufficient for joinder.  See BMG Music v. Does 1-203, 2004 WL

953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since 2002.[4]

Plaintiff claims all of the defendants are properly joined because they illegally downloaded/shared the Polish film (*Weekend*) via BitTorrent. Plaintiff provided the Court Exhibit A to their Complaint listing all the IP addresses of the defendants and a specific date/time (UTC), it was observed illegally downloading/sharing the film. John Doe #1240 (IP address 98.149.188.252) was the first instance of downloading/sharing by defendants identified by plaintiff's agents on 4/10/2011 at 10:52AM Coordinated Universal Time (UTC). The last instance of downloading/sharing identified by Plaintiff's agents was on 6/9/2011, at 7:30AM UTC, by John Doe # 1035 (IP address 69.125.108.148). Plaintiff incorrectly states the infringement was accomplished by the Defendants "acting in concert with each other." Exhibit A to the complaint shows the entire timeframe of the activity (10 Apr 11 – 9 Jun 11), but not which IP addresses actually acted in concert. The nature of BitTorrent does not support Plaintiff's claim that All John Doe IP addresses acted together for the entire period of approximately two months.

The nature of BitTorrent is that the work in question is first made available to others BitTorrent users by a small number, usually one IP address. As other BitTorrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the

---

[4]http://gondwanaland.com/mlog/2004/12/30/deployment-matters/

swarm shrinks, and eventually disappears.  IP addresses commonly join and leave various BitTorrent swarms at all times during the life of the torrent.  Exhibit A to this motion graphically shows the number of IP addresses Plaintiff identified during each day their collections (10 Apr 11 – 9 Jun 11).  This graph shows the largest number of IP addresses identified by Plaintiff occurred during the middle portion of their collection efforts.  Plaintiff's agents who collected the data on John Doe IP addresses (Exhibit A of the complaint) can verify the nature of BitTorrent, as well as provide details on who of the John Does IP addresses in this case truly shared the work between the other John Does IP addresses in this case.

In the January 2011 Technical Report: *An Estimate of Infringing Use of the Internet*, by *Envisional*[5] (a major company specializing in detecting and guarding against the threats of counterfeiting, piracy, fraud and online brand abuse), the following was noted for the single day analysis of BitTorrent use:

> For the 2.72 Million torrents identified, only .2% had 100 or more downloaders.  2.6% of the torrents had 10-99 downloaders.   51.9% of the torrents had from one to nine downloaders.   45.2% had no active downloads.   Envisional also noted that a similar spread of "seeders" (users with a complete copy of the work) were associated with the torrents.  For 48.5% of the torrents, there were no seeders connected.  (Page 9)

This report clearly shows the vast majority of torrents only had zero to nine downloaders associated with them and a very limited number of file seeder at any one instance.

The similar but separate nature of the BitTorrent connections is highlighted in three recently filed copyright infringement cases in Colorado (K-Beech Inc., v. John Doe, 1-11-cv-02370-PAB, K-Beech Inc., v. John Doe, 1-11-cv-02371-CMA, and K-Beech Inc., v. John Doe, 1-

---

[5] http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf

11-cv-02372-MSK) filed on 8 Sep 2011.  Plaintiff's attorney in Colorado decided to file separate cases for each John Doe, as joinder of the three could not justified by location only.

Plaintiff has also improperly joined many IP addresses (Doe defendants) that do not reside within the jurisdiction of the court.  Plaintiff conducted only a cursory collection of IP addresses and did not try to determine where the IP addresses are physically located.  Even with their limited IP addresses analysis, Plaintiff should have been able determine that many of the IP address were not within the court's jurisdiction.  Exhibit B to this motion (page 17 from Plaintiff's complaint) lists the IP address of defendant and their Internet Service Provider.  Eight of the IP addresses on this page clearly show ISPs not within the court's jurisdiction - Colorado, Connecticut, and Illinois.  A simple freely available IP address geo-location Web site, such as www.ipligence.com should have been used to validate the proper jurisdiction for each IP address.  Exhibit C shows the geo-location of John Doe #342 (IP address 209.190.112.18), with an ISP of "*Columbus Network Access Point, Inc.,*" as being located in Columbus, OH.  Plaintiff knows that many of the Doe defendants do not reside within the court's jurisdiction, but they still improperly joined them together to obtain subscriber information from the ISPs.  Many of the Courts that previous heard these types of mass copyright infringement cases have correctly named this activity as a "Fishing Expeditions" for subscriber information.  Plaintiff has no intention of naming any of the Doe defendants, much less bringing them to an actual trial after they obtain this information and settlement efforts fail.  Plaintiff will use the subscriber information obtained from the ISPs to send out settlement letters attempting to scare Doe defendants into paying a couple thousand dollars to make the case go away, regardless of truly being guilty.  The current state of mass copyright infringement cases in the US clearly shows this is the standard business model for these types of cases.

Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants.  Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

## CONCLUSION

The improper joining of 1449 Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice.  As noted by previous courts, the use of these cases (and the courts) as a means of obtaining subpoenas to issue settlement letters is well documented ("Fishing Expeditions").  Even when John Doe defendants choose not to settle, the plaintiffs in these cases ultimately fail to name defendants and start further court actions.  Many of these types of cases are kept open for as long as possible so the plaintiffs can obtain as much settlement money as possible, before they voluntarily dismiss the case and move onto a new one. Recent developments in a Steele Hansmeier PLLC Case (*1:10-cv-06254, First Time Videos v. Does 1-500*), is a prime example where Plaintiff kept the case open for a year without naming a defendant.  On 28 Sep 11, Steele Hansmeier dismissed all but eight Doe defendants from this case; subscriber information for the eight Does defendants were still pending from the ISP. There is a well documents history of these types of cases in the Northern Districts of Illinois and California.

As noted in the Envisional technical report, majority of the BitTorrent swarms they

sampled had only Zero to Nine downloaders and a similar number of "seeders."  A total of 1449 BitTorrent downloaders and "seeders" all connected at once is highly unlikely.  According to the Envisional technical report, only .2% had 100 or more downloaders at one time.  Plaintiff's records do not show how any of the IP addresses they identified interacted with each other (sharing the file in question).

The court should also note the very cursory effort Plaintiff has taken to identify the true copyright infringers.  As the IP address assigned to each defendant does not equal culpability, simply going after the registered owner of the IP address is irresponsible.  The registered user of the IP address only identifies the person who pays the Internet Service Provider (ISP) for Internet access.  There are multiple possibilities as to why the defendant did not copyright infringe against Plaintiff.  Possible reasons are:  computer/network was "hacked" by unauthorized personnel; Home WiFi connection run "Open" and used by unauthorized personnel (neighbor, etc.); Guest at the defendant's residence used the network and defendant was not aware of the activity.  Without additional investigative steps, innocent personnel are bound to be implicated in infringement activity and pressured to pay settle amounts to make the threat of a federal law suit go away.

As Plaintiff does not intend to conduct further investigative effort and only wishes to send out settlement letters to defendants, I respectfully request the Court dismiss the subpoena requiring the ISP provide the subscriber information on all John Doe defendants.  In addition, I respectfully request the court sever Doe defendants 2-1449 from this case, as there is no evidence to show that ALL the Doe defendants acted together are thus they are incorrectly joined together. *See* Fed. R. Civ. P. 21.

Dated: X/XX/2011                        Respectfully submitted,


_____

John Doe
*Pro se*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on X/XX/2011, I served a copy of the foregoing document, via US Mail, on:

THE McDANIEL LAW FIRM, PC
54 Main Street
Hackensack, New Jersey 07601

Dated: X/XX/2011                                     Respectfully submitted,


_____

John Doe
*Pro se*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608



THE MCDANIEL LAW FIRM, PC
54 Main Street
Hackensack, New Jersey 07601

Exhibit A



| Number | IP Address | Internet Service Provider | Date | Time (UTC) |
|--------|-----------|---------------------------|------|-----------|
| 325 | 96.24.23.230 | Clearwire US LLC CLEAR-26 | 2011.06.04 | 12:06 AM |
| 326 | 96.24.133.137 | Clearwire US LLC CLEAR-26 | 2011.06.07 | 1:06 AM |
| 327 | 96.24.128.194 | Clearwire US LLC CLEAR-26 | 2011.06.07 | 9:18 AM |
| 328 | 50.9.19.7 | Clearwire US LLC-CLEAR-26 | 2011.04.11 | 8:48 PM |
| 329 | 71.23.128.19 | Clearwire US LLC-CLEAR-26 | 2011.04.25 | 3:36 AM |
| 330 | 50.13.42.221 | Clearwire US LLC-CLEAR-26 | 2011.04.28 | 3:40 PM |
| 331 | 50.10.167.246 | Clearwire US LLC-CLEAR-26 | 2011.04.29 | 4:56 AM |
| 332 | 50.14.224.199 | Clearwire US LLC-CLEAR-26 | 2011.04.30 | 1:14 AM |
| 333 | 50.9.63.55 | Clearwire US LLC-CLEAR-26 | 2011.05.01 | 3:13 AM |
| 334 | 71.23.164.99 | Clearwire US LLC-CLEAR-26 | 2011.05.03 | 6:08 PM |
| 335 | 50.14.209.76 | Clearwire US LLC-CLEAR-26 | 2011.05.06 | 12:34 PM |
| 336 | 71.23.140.198 | Clearwire US LLC-CLEAR-26 | 2011.05.09 | 8:12 PM |
| 337 | 50.9.36.27 | Clearwire US LLC-CLEAR-26 | 2011.05.11 | 8:11 AM |
| 338 | 71.23.141.176 | Clearwire US LLC-CLEAR-26 | 2011.05.11 | 9:15 PM |
| 339 | 71.21.56.240 | Clearwire US LLC-CLEAR-26 | 2011.05.11 | 11:07 AM |
| 340 | 50.14.153.8 | Clearwire US LLC-CLEAR-26 | 2011.05.20 | 3:54 PM |
| 341 | 50.14.61.110 | Clearwire US LLC-CLEAR-26 | 2011.05.23 | 6:47 PM |
| 342 | 209.190.112.18 | Columbus Network Access Point, Inc. | 2011.04.23 | 12:52 PM |
| 343 | 73.207.254.216 | Comcast Business Communications, Inc. CHESTERFIELD-CDM-4 | 2011.06.03 | 12:51 PM |
| 344 | 173.15.110.26 | Comcast Business Communications, LLC CBC-ILLINOIS-44 | 2011.04.27 | 8:03 PM |
| 345 | 173.161.78.110 | Comcast Business Communications, LLC CBC-ILLINOIS-45 | 2011.05.06 | 2:11 AM |
| 346 | 24.7.54.153 | Comcast Cable Communications BAYAREA-11 | 2011.05.04 | 9:13 AM |
| 347 | 24.7.85.204 | Comcast Cable Communications BAYAREA-11 | 2011.05.13 | 12:07 AM |
| 348 | 24.5.8.157 | Comcast Cable Communications BAYAREA-9 | 2011.05.02 | 8:09 AM |
| 349 | 24.9.100.48 | Comcast Cable Communications COLORADO-10 | 2011.05.11 | 6:57 PM |
| 350 | 24.2.181.125 | Comcast Cable Communications CONNECTICUT-4 | 2011.04.28 | 9:09 AM |

Exhibit C

